# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KAREN FOWLER**, | Case No.: 3:16-cv-1520-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **NANCY A. BERRYHILL**, Commissioner of Social Security, | |
| Defendant. | |

Bruce W. Brewer, LAW OFFICES OF BRUCE W. BREWER, PC, PO Box 421, West Linn, OR 97068. Of Attorney for Plaintiff.

Billy J. Williams, United States Attorney, and Renata A.Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Martha A. Boden, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Karen Fowler ("Plaintiff") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her applications

for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") pursuant to

the Social Security Act. Because the Commissioner's decision is not based on the proper legal

standards and the findings are not supported by substantial evidence, the decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

**BACKGROUND**

## A. Plaintiff's Application

Plaintiff was born December 1, 1951. Administrative Record ("AR") 113. She filed her application for DIB on May 20, 2013, when she was 61 years old, alleging disability beginning on February 28, 2009, when she was 57 years old. AR 113. She also prospectively filed an application for SSI on the same date. AR 115. Plaintiff alleges disability based on chronic neck and back pain, hearing loss, hypertention, and vertigo. AR 115. The Commissioner denied Plaintiff's applications for DIB and SSI on August 1, 2013, and on reconsideration on October 8, 2013. AR 69, 78, 93, 104.

On October 28, 2013, Plaintiff requested a hearing to review the denial of her applications for SSI and DIB. AR 148. The ALJ granted the request on November 17, 2014, and scheduled the hearing for February 20, 2015. AR 181. Administrative Law Judge ("ALJ") Vadim Mozyrsky presided over the hearing. AR 30. The ALJ issued a decision finding Plaintiff was not disabled and denied Plaintiff's application for SSI and DIB on May 22, 2015. AR 14. On June 17, 2015, Plaintiff requested review by the agency Appeals Council and requested more time to submit additional evidence. AR 13. On July 22, 2015, the Appeals Council granted the request for additional time. AR 8. On May 24, 2016, the Appeals Council granted Plaintiff's request to add audiology reports from Albertina Kerr dating from February 10, 2015 through April 29, 2015, and a letter from Plaintiff's representative dated August 31, 2015. AR 7. On the same day, the Appeals Council, finding no reason under the Agency's rules to review the ALJ's decision, denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. AR 1. Plaintiff seeks review of the Commissioner's decision that Plaintiff is not disabled.

**B.  The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the

claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

The ALJ applied the sequential analysis described above. AR 17-23. At step one, the ALJ found Plaintiff had not engaged in any substantial gainful activity after the alleged onset date of February 28, 2009. AR 19. At step two, the ALJ found that Plaintiff had the severe impairments of bilateral hearing loss, chronic neck and back pain, and vertigo. AR 19. At step three, the ALJ found that Plaintiff's impairments did not meet the criteria of any listed impairment singularly or in combination under 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920, 416.920(d) or 416.926. AR 20.

The ALJ then determined that Plaintiff's RFC allow her:

> [T]o lift 20 pounds occasionally and 10 pounds frequently, carry 20 pounds occasionally and 10 pounds frequently, sit 6 hours out of an 8-hour day and stand or walk 2 hours out of an 8-hour day, push and pull as much as she can lift and carry, occasionally reach overhead bilaterally, frequently climb ramps and stairs, never climb ladders and scaffolds, occasionally balance, occasionally crawl, and [that she] would need a quiet noise environment.

AR 20. At step four, the ALJ found that Plaintiff was capable of performing the past relevant work of an appointment setter and telephone solicitor and that such jobs were not precluded by Plaintiff's RFC. AR 23. As such, the ALJ found that Plaintiff was "not disabled" from the filing date of Plaintiff's application to the date of the decision, and rejected Plaintiff's application for SSI and DIB. AR 23.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (A) finding that Plaintiff could perform the job of telephone solicitor because it conflicts with Plaintiff's RFC and the ALJ improperly relied on the testimony of the Vocational Expert ("VE") without explaining the divergence with the job description in the Dictionary of Occupational Titles ("DOT"); (B) failing to provide specific and legitimate reasons for discounting Dr. Michael Flaming's opinion that Plaintiff was limited in

operating over the telephone; (C) finding that Plaintiff's past relevant work of appointment setter was performed at the level of substantial gainful activity (D) rejecting the opinion of Audiologist ("Au.D.") Ela Nelson; and (E) failing to offer clear and convincing reasons for rejecting Plaintiff's testimony. ECF 15. The Court addresses each assignment of error in turn.

## A. Telephone Solicitor Job

Plaintiff asserts that the ALJ erred by finding Plaintiff was able to work as a telephone solicitor because this job conflicts with Plaintiff's RFC and the ALJ failed to provide a "reasonable explanation" for the conflict between the VE testimony and the DOT, as required under Social Security Ruling ("SSR") 00-4p. Plaintiff argues that this error was likely caused by the VE mistakenly identifying the wrong DOT job number. As such, Plaintiff argues that the ALJ improperly relied on the VE testimony that conflicted with the DOT job description without adequately explaining why he credited the diverging testimony. Plaintiff further argues that the VE's testimony on this point is thus of no evidentiary value. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (holding that VE testimony does not constitute substantial evidence or have evidentiary value when medical evidence supports a limitation that the ALJ had no clear and convincing reason for excluding from the hypothetical question posed); *see also Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001).

Defendant responds that the ALJ fulfilled his obligations under SSR 00-4p by asking the VE whether there was a conflict, and because there was no apparent conflict the ALJ was entitled to rely on the VE's testimony. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (stating that the ALJ is entitled to rely on the VE's testimony when the hypothetical question posed to the VE presents an RFC containing all of Plaintiff's limitations that the ALJ found credible and supported by substantial evidence). Defendant asserts that because there was

no apparent conflict, the ALJ was not required to give a reasonable explanation for divergence between the VE and the DOT or SCO.

The ALJ found that Plaintiff was limited to working in a quiet work environment. AR 20. The SCO sets noise intensity levels on a scale of one-through-six. *See* U.S. Dep't of Labor, SCO, App'x D (1993). Quiet workplaces are set at level two, which is between noise level of one, or "very quiet", and noise level of three, or "moderate." Very quiet noise level workplaces include isolation booths for hearing tests, deep sea diving, and forest trails. *Id.* Quiet noise level workplaces include libraries, many private offices, funeral receptions, museums, and golf courses. *Id.* Moderate noise level workplaces include business offices where typewriters are used, department stores, grocery stores, light traffic, and fast food restaurants at off-hours. *Id.*

During the hearing, the ALJ asked the VE to review Plaintiff's past work and the VE recited a number of Plaintiff's past jobs. AR 54. The VE finished reviewing Plaintiff's work history by stating, "she's been a telephone solicitor which is (DOT number) 299.337-014." AR 54. The ALJ's first hypothetical differed from Plaintiff's RFC limitations and had less stringent limitations concerning the amount of time Plaintiff could stand and walk, but did contain the quiet noise level limitation. AR 55-56. When the ALJ asked if such an individual could perform any of Plaintiff's past jobs, the VE replied, "appointment setter, cashier, telephone solicitor." AR 56. The ALJ then asked, "[a]nd cashier is a quiet environment?" AR 56. The VE replied, "[w]ell, my understanding is she worked in a pharmacy between May of 2007 and February of 2009 it's listed so I would consider a pharmacy a relatively quiet environment." AR 56. The ALJ posed a second hypothetical that mirrors Plaintiff's RFC and included Plaintiff's limitation that she "would only be able to stand or walk up to two hours total in an eight hour day." AR 56. The ALJ then asked the VE what past jobs would still be available, and

the VE replied, "appointment setter and the telephone solicitor." AR 56. The ALJ then asked the

VE a more stringent hypothetical question:

> [T]he individual would not be able to understand any speech at a
> conversational level and would need [others] . . . to speak in a
> louder voice than conversational level . . . . [and] would not be able
> to understand conversations taking place over a telephone up to 25
> percent of the time no matter what volume is used on the headset
> or the telephone.

AR 56. The ALJ asked if any past jobs would be available with these hypothetical limitations

and the VE replied that they would not be available. AR 56-57. The ALJ then asked, "[h]ave

your answers to my hypotheticals been consistent with the DOT and your experience?" AR 57.

The VE replied, "[t]hey have been." AR 57.

    The ALJ gave Plaintiff's attorney a chance to cross-examine the VE. AR 57. The attorney

questioned the VE about the cashier position that Plaintiff had performed and that the VE

previously testified Plaintiff could still perform under the first hypothetical. AR 58-59. Initially,

the VE stated that the cashier position was a "relatively quiet environment" and stated noisy

environments brought to mind "a machine shop or some type of industrial setting or work

outside using power equipment as opposed to an office or store environment." AR 58. Plaintiff's

attorney then asked whether a person who has difficulty understanding conversation "with any

amount of background noise other than a quiet room" would have difficulty with a cashier

position. AR 58. The ALJ replied that such a person would have difficulties. AR 59. At that

point, Plaintiff's attorney stated there were no further questions, and the ALJ attempted to clarify

the differences between noise levels:

> For the noise level I'm using it as it's understood in the DOT, well,
> so very quiet would be isolated booth for hearing test. Quiet would
> be library, many private offices. Moderate would be department or
> grocery store. Loud would be large movie theaters, heavy traffic,
> large earth movers, heavy traffic.

AR 59. The VE replied, "in that case the, in a retail environment I would say it would be level three, moderate as opposed to level two, quiet." AR 59. Plaintiff's attorney then asked if somebody with difficulties in a moderate noise environment would preclude working in a retail environment, and the VE stated that it would. AR 59. The ALJ "accepted as credible" the vocational expert's testimony. AR 23.

SSR 00-4p provides guidance for the use of VE testimony in disability decisions:

> [T]his ruling emphasizes that before relying on VE or VS [vocational specialists] evidence to support a disability determination or decision, our adjudicators must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), published by the Department of Labor, and Explain in the determination or decision how any conflict that has been identified was resolved.

SSR 00-4p, *available at* 2000 WL 1898704, at *1. SSR 00-4p also requires that "[a]t the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency." *Id.* at *2. SSR 00-4p explicitly requires "that the ALJ determine whether the expert's testimony deviates from the *Dictionary of Occupational Titles* and whether there is a reasonable explanation for any deviation." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). "The ALJ's failure to resolve an apparent inconsistency may leave us with a gap in the record that precludes us from determining whether the ALJ's decision is supported by substantial evidence." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015).

"The ALJ is not absolved of this duty [to reconcile conflicts] merely because the VE responds 'yes' when asked if her testimony is consistent with the DOT." *Lamear v. Berryhill*, 865 F.3d 1201, 1205 n.3 (9th Cir. 2017) (alterations in original) (quoting *Moore v.*

*Colvin*, 769 F.3d 987, 990 (8th Cir. 2014)). In *Lamear*, the defendant cited *Meanel v. Apfel* for the proposition that that counsel must raise issues and evidence at the administrative hearing to preserve those issues for appeal. *Id.* at 1206. The plaintiff in *Lamear* failed to raise the conflict between the VE and the DOT at the hearing with the VE; however, plaintiff's counsel did raise the issue in front of the Appeals Council. *Id.* The court acknowledged that the conflict was raised before the Appeals Council then stated, "more importantly, our law is clear that a counsel's failure [to raise the issue] does not relieve the ALJ of his express duty to reconcile apparent conflicts through questioning" *Id.* (citing *Zavalin*, 778 F.3d at 846) (stating that when an apparent conflict between the VE and DOT exists, "the ALJ is *required* to reconcile the inconsistency" (emphasis in original)).

For a difference between the VE's testimony and the DOT or SCO to be characterized as a conflict, the difference must be "obvious or apparent," which means the conflicting aspect of a job that is "essential, integral, or expected." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016) (holding that the ALJ did not err by failing to ask the VE to resolve why plaintiff's limitation for overhead reaching did not conflict with the cashier listing that required "reaching," because overhead reaching was not an "essential, integral, or expected" part of a cashier job as defined by the DOT and thus there was no "obvious and apparent" conflict).

Here, the ALJ erred by failing to identify the apparent conflict between the SCO and Plaintiff's RFC, and by failing to elicit a reasonable explanation for the conflict from the VE who testified that the job of telephone solicitor was consistent with Plaintiff's limitations. Plaintiff correctly notes that the VE identified the wrong job number for telephone solicitor by identifying number 299.337-014. This number supplied by the VE does not correlate to any job position in the DOT or SCO. Plaintiff identifies 299.357-014 as the number that correlates with

the telephone solicitor position. The SCO states that the position entails a moderate noise level of three. *See* U.S. Dep't of Labor, SCO, pt. A at 355 (1993). This mistake of DOT numbers may well have caused the error and may explain why the VE did not recognize the conflict when asked whether a conflict existed.

Additionally, the VE did not appear to grasp how the DOT defined the different noise levels when he testified that the job did not conflict. Only after the ALJ clarified how the DOT noise levels were defined did the VE state that Plaintiff could not work in a moderate noise level three environment. Had the ALJ attempted independently to identify whether a conflict existed with the DOT and SCO, rather than relying on the VE's statement that the job did not conflict with Plaintiff's RFC, the ALJ may have recognized that the VE had provided the wrong DOT number. Defendant correctly argues that the ALJ fulfilled one of the duties imposed by SSR 00-4p in asking the VE whether the job was consistent with Plaintiff's RFC. The VE stating that a job is consistent with the DOT or SCO, however, does not absolve the ALJ of reconciling apparent conflicts. *Lamear*, 865 F.3d at 1205 n.3. Further, as in *Lamear*, Plaintiff's failure to raise the issue to the VE during the hearing is not fatal to Plaintiff's argument of error. The more important consideration, as *Lamear* makes clear, is the ALJ's independent duty to identify such conflicts.

The divergence between Plaintiff's RFC and the SCO noise level for a telephone solicitor occupation constitutes an apparent conflict that the ALJ was required to reconcile. *See Lamear*, 865 at 1206 (citing *Zavalin*, 778 F.3d at 846). The conflict was "obvious and apparent" because the SCO states that a telephone solicitor job has a moderate noise level of three, which is higher than Plaintiff's RFC limitation of being limited to quiet environments, defined as a noise level two. AR 20. *See Guitierrez*, 844 F.3d at 808. Further, after the VE testified that Plaintiff

could perform a telephone solicitor occupation, the ALJ clarified to the VE that the noise

limitations in Plaintiff's RFC were the noise levels defined in the DOT, after which the VE

clarified that moderate noise would preclude Plaintiff from performing the cashier job in a retail

environment. AR 59. As such, the VE testimony was evidence that Plaintiff could not work with

moderate noise. Plaintiff did not raise the noise level issue in the hearing with the VE with regard

to the telephone solicitor job specifically—although the attorney did raise it with respect to a

cashier position—regardless, the error was obvious and apparent had the ALJ reviewed

independently the DOT and SCO to identify such conflicts with Plaintiff's RFC.

The Ninth Circuit opinion in *Rounds* is persuasive on this issue. In *Rounds*, the

plaintiff's RFC limited her to performing "one- and two-step tasks." *Rounds v. Comm'r Soc. Sec.

Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015). The court held that this limitation conflicted with a

job that required reasoning level two, which the DOT defines as applying "commonsense

understanding to carry out detailed but uninvolved written or oral *instructions*." *Id.* (emphasis

added). Rather, the plaintiff's RFC was akin to reasoning level one, which the DOT defines as

"[a]pply[ing] commonsense understanding to carry out simple one- or two-step instructions." *Id.*

The court was unpersuaded by the Commissioner's attempts to distinguish the word "tasks" in

Plaintiff's RFC from "instructions" in the DOT definitions. *Id.* The court clarified that if an ALJ

overlooks such a conflict, that does not mean the conflict is not apparent:

> Because the ALJ did not recognize the apparent conflict between
> Round's RFC and the demands of Level Two reasoning, the VE
> did not address whether the conflict could be resolved. As a result,
> we cannot determine whether substantial evidence supports the
> ALJ's step-five finding. On remand, the ALJ must determine
> whether there is a reasonable explanation to justify relying on the
> VE's testimony.

*Id.* at 1004 (citations and quotations omitted). Hence, the fact that an ALJ overlooked a conflict does not relieve the ALJ of the independent obligation to identify and reconcile such conflicts.[1] Here, the conflict is more apparent than in *Rounds* where the RFC used the word "tasks" and the DOT used the word "instructions," as there is no variation in language between Plaintiff's noise limitation and the SCO's noise levels. Rather, Plaintiff's RFC limited her to quiet environments, or noise level two, and the job of telephone solicitor involves moderate noise, or noise level three. The Court finds no persuasive evidence to support the deviation in the record. Rather, it appears the VE and ALJ did not recognize the apparent conflict, therefore the ALJ did not identify the conflict, and therefore the ALJ could not provide reasonable explanation for a conflict between the VE testimony and the DOT and SCO. As such, based on Plaintiff's RFC and the medical evidence, the conclusion that Plaintiff can perform a telephone solicitor job is not supported by substantial evidence.

## B. Dr. Flaming

Plaintiff argues that the ALJ erred by failing to provide "specific, legitimate reasons" for rejecting the opinion of Dr. Flaming that Plaintiff "would be significantly disabled. . . operating over the telephone." AR 444. *See Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995) (holding that a nontreating doctor's opinion may be considered substantial evidence in order to contradict a treating doctor's opinion when based on independent clinical findings, but where the nontreating doctor bases their opinion on the treating doctor's clinical opinion the ALJ must state

---

[1] Although Plaintiff here bears the burden at step four of the sequential analysis, and much of the case law including *Rounds* concerns step five determinations where the burden shifts to the government, the Court does not find this distinction meaningful. "[O]ur law is clear that a counsel's failure does not relieve the ALJ of [an] express duty to reconcile apparent conflicts." *Lamear*, 865 F.3d at 1206. This duty, imposed by SSR 00-4p, pertains to using occupational information at step four and five of the sequential analysis and applies equally to both steps without distinction. SSR 00-4p. Thus, the duty remains on the ALJ and a claimant is not obligated to identify and resolve such conflicts at step four.

"specific, legitimate reasons" for rejecting the treating doctor's opinion); *see also Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) ("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.") (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). Plaintiff further argues that the ALJ acted as his own medical expert by stating that Dr. Flaming's statements that Plaintiff "conversed freely through the course of the examination" and "[s]he seems to have no difficulties hearing in a quiet environment one on one" conflicted with Dr. Flaming's statement that Plaintiff would be significantly disabled operating over the telephone. Plaintiff contends that Dr. Flaming's statements do not conflict, but rather establish that speaking over the telephone is different than speaking one-on-one in a quiet environment. *Id.*

Defendant responds that the evidence contains conflicting opinions and that the ALJ properly considered, evaluated, and explained the weight given to the opinions by the medical professionals who treated or examined Plaintiff or reviewed her records. *See* 42 U.S.C. § 405(b)(1) (stating that when an ALJ yields an unfavorable decision for an applicant, the ALJ "shall contain a statement of the case, in understandable language, setting forth discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based"); 20 C.F.R. §§ 404.1527 (b) (d) & (e), 416.927 (b) (d) & (e) (setting forth standards for weighing medical evidence, issues reserved for the Commissioner, and evidence of agency consultants); SSR 06-03p *available at* 2006 WL 2329939 (defining "medical opinions," "other opinions," and how an agency will weigh such evidence). Defendant further contends that the ALJ gave specific, legitimate reasons for rejecting the contradicted opinions of Dr. Flaming by providing a detailed and thorough summary of the facts and conflicting evidence, stating the

ALJ's interpretation of the evidence, and then making a finding. *Tommasetti v. Astrue*, 533 F.3d

1035, 1041 (9th Cir. 2008).[2] Thus, Defendant argues, the ALJ fulfilled his duties and supported

his decision with substantial evidence.

Dr. Flaming is an ear, nose, and throat specialist ("ENT") who examined and performed

an audiogram for Plaintiff on November 4, 2009, and provided a letter stating his conclusions.

AR 442-46. Dr. Flaming also examined Plaintiff on May 20, 2007, prior to Plaintiff's alleged

onset of disability. AR 417-20. The issue identified by Plaintiff and contested by Defendant

pertains to the examination on November 4, 2009, during the alleged time of disability, rather

than the examination in 2007. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1165 (9th Cir. 2008)

(stating that medical evidence predating plaintiff's disability onset date are of limited relevance).

During the examination on November 4, 2009, Dr. Flaming found that Plaintiff had

discrimination of 88% in her right ear and 84% in her left ear, had a speech reception threshold

of 45 dB AU, and that the audiogram showed "mild-to-profound, essentially equal, sensorineural

hearing loss." AR 444. Dr. Flaming reported that he and Plaintiff "conversed freely through the

course of the examination" and "[s]he seems to have no difficulty hearing in a quiet environment

one on one." AR 444. Two short paragraphs later in his letter Dr. Flaming stated, "[i]n regards to

work-related activities, from an ENT standpoint. . . .[s]he can hear in a quiet environment and

would be significantly disabled in a noise competitive environment or operating over the

telephone." AR 444.

_____

[2] Defendant also argues that the ALJ need not accept the opinion of any physician if the
doctor inadequately supports the opinion with clinical findings. *Thomas v. Barhart*, 278 F.3d
947, 957 (9th Cir. 2002) (finding that the ALJ's rejection of a treating or examining doctor's
unsupported opinion that the plaintiff had an "inability to work" was supported by substantial
evidence where the doctor had previously made clinical findings that supported the plaintiff
could work with "good anti-inflammatory medication"). The ALJ did not opine that
Dr. Flaming's opinion was inadequately supported and the Court may not affirm on grounds that
the ALJ did not rely. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).

The ALJ acknowledges all of Dr. Flaming findings. AR 21. The ALJ gave "great weight" to Dr. Flaming's opinion that Plaintiff's limitations precluded her from noisy environments. The ALJ did not give the same weight to Dr. Flaming's opinion that Plaintiff had a telephone limitation:

> [T]he undersigned finds no limitations in operating over the telephone as she maintains adequate hearing for normal conversation with hearing aids. Greater weight is given to the opinion of Robert Handler [*sic*], M.D., a State agency consultant. He had the opportunity to review additional evidence and found no limitation in telephone work.

AR 21 (citation omitted). Some of the language of this finding draws from Dr. Robert Hander's October 2013 assessment of the medical testimony, as discussed below.

Before the applications that are the subject of this appeal, Plaintiff had previously applied for SSI and DIB. Those applications were denied on November 18, 2009. During the adjudication of those applications, on November 16, 2009, state agency consultant Dr. Linda Jensen performed a "physical residual functional capacity assessment" based on Plaintiff's medical history. AR 447-54. Dr. Jensen found that Plaintiff should avoid even moderate exposure to noise, "[r]equires [a] decreased noise environment due to hearing loss/bilat hearing aid," and should have "[n]o constant phone work." AR 451. Dr. Jensen based this opinion in part on Dr. Flaming's 2009 medical findings. AR 454.

Dr. Hander found that Plaintiff had communicative limitations, limited hearing in both ears, and was "[c]apable of hearing normal conversation" but "[l]oud background noise should be avoided." AR 91-92. This answer from Dr. Hander replied to the question: "Explain communicative limitations and how and why the evidence supports your conclusions. Cite specific facts upon which your conclusions are based." AR 92. Dr. Hander did not state how the evidence supported this conclusion, nor on what facts his opinion is based. Dr. Hander did not

affirmatively state that Plaintiff can work over the telephone. The Court reads the absence of this limitation as indicating that Plaintiff has no telephone limitation; however, Dr. Hander's opinion provides the Court no affirmative rationale for finding Plaintiff may operate over the telephone or why Dr. Hander disagreed with Drs. Flaming and Jensen on this limitation.

While assessing Plaintiff's RFC, the ALJ stated: "Greater weight is given to the more recent State agency assessment as it is more consistent with the additional treatment records. The undersigned does not find [Plaintiff] is restricted from telephone work. Her hearing is adequate for normal conversation with use of hearing aids." AR 22.

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(c)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the

opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Thus, a treating and examining physician is entitled to greater weight than a non-examining physician. *Garrison*, 759 F.3d at 1012; *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted).

Here, the Court need not determine whether Dr. Flaming was a treating or examining physician. The ALJ did not state whether he considered Dr. Flaming a treating or examining physician. AR 21. The parties do not argue this point, and the issue and analysis remains the same: whether the ALJ provided specific and legitimate reasons that were supported by substantial evidence for giving greater weight to the more recent opinion of Dr. Hander, a non-examining doctor, than to Dr. Flaming, a treating or examining doctor and specialist, concerning Plaintiff's ability to work over the telephone.

The Court finds that the ALJ did not provide specific and legitimate reasons for not crediting Dr. Flaming's opinion that Plaintiff was severely disabled from working over the telephone. Dr. Hander is a nonexaming physician whose opinion cannot by itself constitute substantial evidence sufficient to contradict the opinion of Dr. Flaming, a treating or examining physician and specialist. The ALJ's stated reasons for giving Dr. Hander greater weight was because "[h]e had the opportunity to review additional evidence and found no limitation in telephone work." AR 21. Later in the opinion, the ALJ further referenced the state agency consultant Dr. Jensen's opinion that Plaintiff "should do no constant phone work," and stated, "[g]reater weight is given to the more recent State agency assessment [performed by Dr. Hander] as it is more consistent with additional treatment records." AR 22. A doctor's decision is not necessarily entitled to more weight than another doctor's opinion merely because the opinion is more recent, especially when the earlier doctor was a treating or examining specialist. The ALJ merely references that Dr. Hander *had* additional records to consider, but does not specify *what* evidence in those records supports the conclusion that Plaintiff cannot work over a telephone.

Nor does the record appear to contain substantial evidence supporting that the additional records available to Dr. Hander indicate that Plaintiff's condition has changed or improved and that she may in fact work in a job requiring significant telephone use. The ALJ does not identify any evidence in the record to support the conclusion that Plaintiff no longer has a telephone limitation and the Court could not locate any such evidence. The evidence in the record does not suggest improvement after Dr. Flaming's opinion, and on the contrary, may suggest Plaintiff's hearing declined.

The ALJ noted that Plaintiff's speech discrimination score was 84% in her left ear and 88% in her right ear when Dr. Flaming examined her in 2009. AR 21, 446. The ALJ then cited a

March 2011 hearing assessment that found Plaintiff's speech discrimination was 80% in her right ear and 84% in her left ear. AR 21, 507. This slight decrease does not support Plaintiff's hearing improved between the two tests, and the report confirms that there was "minimal changes from 2004." AR 508. The ALJ further cited a February 2015 hearing assessment that determined Plaintiff's "speech discrimination scores were 64% in both ears" but found there was "no significant change in hearing since the March 2011 assessment." AR 21, 613. Thus, there were "minimal changes" or "no significant" change between 2004 and 2015. The ALJ does not comment further on these scores, but noted that "[n]ew hearing aids were recommended." AR 21. The record does not state whether Plaintiff's hearing aids were used during this test or the 2011 test. AR 613. Alternatively, other speech discrimination testing scores have indicated additional "aided" testing. AR 509 (showing Plaintiff had 88% in her right ear, 64% in her left ear, and 96% while "aided" in a test prior to the alleged date of disability in 2004). Although the 2015 speech discrimination test states there was "no significant change in hearing," it also states that Plaintiff "reports decreased hearing sensitivity." AR 613. Perhaps the decrease in Plaintiff's speech discrimination score percentage from her 2011 test to her 2015 test does not constitute a "significant change," however, the evidence does not support that Plaintiff's hearing *improved* over that period.

Under these circumstances, the failure of the ALJ to incorporate Plaintiff's telephone limitation into Plaintiff's RFC was not harmless. The ALJ concluded that Plaintiff could perform the past relevant work of a telephone solicitor and appointment setter. AR 23. A limitation from working over the telephone clearly precludes the telephone solicitor occupation, where an employee "[s]olicits orders for merchandise or services over the telephone." DOT, 299.357-014. Additionally, the VE identified the DOT number 237.367-010 for the appointment setter

occupation (although the DOT labels this position "appointment clerk"). This position is defined where an employee:

> Schedules appointments with employer or other employees for clients or customers *by mail, phone, or in person*, and records time and date of the appointment in appointment book. Indicates in appointment book when appointments have been filled or cancelled. *May telephone or write* clients to remind them of appointments. May receive payments for services, and record them in ledger. *May receive callers* [RECEPTIONIST (clerical)]. May operate switchboard [TELEPHONE OPERATOR (clerical)].

(emphasis added). It is not for the Court to determine whether Plaintiff would be able to perform an appointment setter job with a limitation from telephone use; however, the DOT's description clearly indicates that telephone use may be a significant aspect of the job such that the Court cannot say the ALJ's error is nonprejudicial or inconsequential. Moreover, the VE testified that Plaintiff would not be able to perform either job if she could not understand speech at conversational levels and she "would not be able to understand conversations taking place over a telephone up to 25 percent of the time no matter what volume is used." AR 56. The record does not support that Plaintiff cannot hear speech at conversational levels, but the VE's testimony was unclear as to what limitation would preclude Plaintiff from performing this job. Upon remand, the ALJ should seek to clarify whether the appointment setter position would be available to Plaintiff.

## C.  Appointment Setter as Past Relevant Work

The ALJ found that Plaintiff's previous employment as an appointment setter constituted past relevant work. To qualify as past relevant work, a claimant must have worked at a job long enough to learn the position and the position must qualify as "substantial gainful activity." *See* 20 C.F.R. §§ 404.1560, 416.960. "Substantial gainful activity is work done for pay or profit that involves significant mental or physical activities." *Lewis v. Apfel*, 236 F.3d 503, 515 (9th

Cir. 2001). A minimum level of earnings is a presumptive, although not conclusive, sign that a position was a substantial gainful activity. *Id.*

Plaintiff argues that her previous employment as an appointment setter does not constitute substantial gainful activity, and thus cannot be considered past relevant work. Several self-reported documents in the administrative record detail Plaintiff's employment history. AR 258, 297, 319. All of these reports state that Plaintiff worked as an appointment setter for a siding company from June 2004 to August 2005, a 14-month period. Plaintiff and Defendant agree that Plaintiff performed this work for Charles W. Gross Housecraft Service Company and earned a total of $6,704.01. AR 233-34. Plaintiff left this position to perform childcare. AR 40-41.

Defendant acknowledges that Plaintiff correctly states that the average monthly earning for this position was $478.86, which is less than the 2004 presumptive dollar amount of $810 per-month for a non-blind applicant required to constitute substantial gainful activity. Defendant further notes, however, that one of the self-reported employment history reports states that Plaintiff also worked as an appointment setter for a publishing company between March 2007 and April 2007. AR 258. With the addition of this job, the total amount of time Plaintiff worked as an appointment setter is at least 15 months. Defendant argues that this amount of time is long enough to learn the position, and thus meets the first element for past relevant work.

Defendant asserts this 2007 appointment setter position was at Regal Printing, citing to Plaintiff's social security record. AR 235. This is consistent with Plaintiff's self-reported employment history that she worked two different jobs in 2007, one at a publishing company and the other at a drugstore. AR 235, 258. Defendant contends that Plaintiff worked at Regal Printing for one month, and thus Plaintiff's wage total from Regal Printing of $1124.03 would meet

the 2007 presumptive "substantial gainful activity" dollar amount of $900 per month for a non-blind applicant.

The ALJ explained the five-step analysis and acknowledged that at step four, in order to determine a claimant can perform past relevant work, the work must have lasted long enough for the claimant to learn to do the job and have been substantial gainful experience. AR 19. The ALJ did not, however, address these two issues at step four when the ALJ found that Plaintiff could perform the past relevant work of appointment setter. AR 23.

The record is unclear as to whether Plaintiff's past work as an appointment setter constitutes substantial gainful activity. First, it is not clear whether Plaintiff in fact worked at Regal Printing for only one month. Plaintiff's self-reported employment report states that she worked there from March 2007 to April 2007. AR 258. No other part of the record details Plaintiff's employment at Regal Printing and the Court cannot discern the length of time Plaintiff worked there from her social security records. AR 235. If Plaintiff worked there for both months of March 2007 and April 2007, or even for six weeks during that period, Plaintiff's work would not meet the 2007 presumptive dollar amount for substantial gainful activity.

Second, even if Plaintiff only worked for a single month (four weeks) and the pay at Regal Printing met the presumptive dollar amount, questions remain whether such work constitutes substantial gainful activity. *Cf. Lewis*, 236 F.3d at 515-16 (noting that the ability to perform some work may not be dispositive because the question is whether a claimant can work "on a regular and continuing basis" and identifying factors that could overcome a high earnings presumption). Upon remand, the ALJ should obtain further evidence as to the duration of Plaintiff's job at Regal Printing, identify whether it meets the presumptive earnings amount, and if so, address whether Plaintiff's situation overcomes the high earnings presumption.

**D. Au.D. Nelson**

Plaintiff next argues that the ALJ erred by rejecting Au.D. Nelson's opinion and by not incorporating a specific functional limitation identified by Au.D. Nelson that Plaintiff cannot "function in a variety of environments, especially those where competing background noise is present." AR 510. Plaintiff cites SSR 96-5p, arguing that the ALJ was required to recontact Au.D. Nelson before rejecting her opinion. *Available at* 1996 WL 374183, at *2 (stating that an ALJ must make "every reasonable effort" to recontact a treating source when the opinion or it's basis is unclear to the ALJ); *see also Caldwell v. Astrue*, 804 F. Supp. 2d 1098, 1102 (D. Or. 2011) ("[W]hen medical reports lack statements about what a claimant can do despite his [or her] impairments, the ALJ may supplement the record by re-contacting the claimant's doctor for clarification. Conversely, where the ALJ's duty is not triggered, it is a claimant's duty to prove that he [or she] is disabled" (citations omitted)). Plaintiff does not offer an appropriate RFC limitation in arguing that the ALJ rejected Au.D. Nelson's opinion apart from citing the medical opinion. Nor does Plaintiff cite any case law concerning an analogous medical opinion and appropriate corresponding RFC limitation. The ALJ gave Au.D. Nelson's opinion "some weight," found that "no specific functional limitations were provided," and stated that "[h]er opinion is generally consistent with a capacity for work in quiet environments." AR 21. Defendant argues that the ALJ did not reject Au.D. Nelson's opinion, and even if her opinion was rejected the ALJ was not required to abide by SSR 96-5p because Au.D. Nelson was not an acceptable medical source.

The Court finds that the ALJ incorporated Au.D. Nelson's opinion into Plaintiff's RFC. Plaintiff alleges that the ALJ rejected Au.D. Nelson's opinion that Plaintiff would be limited in employment "where competing background noise is present." AR 510. The Court finds the ALJ incorporated this opinion into Plaintiff's RFC by limiting Plaintiff to work in quiet environments.

The Court reads the ALJ's summary of Au.D. Nelson's opinion to state that the Nelson provided no specific functional limitations apart from requiring a quiet work environment. AR 21. The SCO's noise intensity levels determine the amount of noise "to which the worker is exposed in the job environment." *See* SCO App'x D. Thus, a quiet noise intensity level has less exposure to competing background noise. The examples given by the SCO—a library, art museum and funeral reception—confirm that quiet environments have reduced exposure to competing background noise. *Id*. Nothing in Au.D. Nelson's opinion suggests, and the evidence in the record would not support, that Plaintiff requires a very quiet noise level one work environment.

**E. Plaintiff's Testimony**

Plaintiff also argues that the ALJ failed to offer clear and convincing reasons for rejecting Plaintiff's testimony about her hearing impairment and limitations. Plaintiff argues that the ALJ erred by offering no reason for rejecting Plaintiff's subjective testimony regarding her hearing loss. Defendant responds that the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony because it conflicted with the medical testimony.

Plaintiff testified regarding her hearing impairment and associated limitations, including testifying that she had to quit her previous telephone solicitation job because she could not hear adequately enough to perform the job. AR 36-37. The ALJ, however, never mentioned this specific testimony. Indeed, the ALJ never mentioned any testimony by Plaintiff relating to her hearing impairments. By ignoring Plaintiff's testimony that she had to quit her job as a telephone solicitor because she could not hear, the ALJ effectively rejected this testimony. *See Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014); *Smolen*, 80 F.3d at 1286.

The ALJ discussed Plaintiff's other alleged symptoms and limitations, such as Plaintiffs' allegations of vertigo and neck and back pain, and their credibility. AR 21-22. The only discussion by the ALJ relating to hearing loss, however, involved the medical evidence and the

opinions of medical practitioners. AR 21. To the extent this discussion was intended by the ALJ to indicate that the medical evidence contradicted Plaintiff's testimony, the ALJ was required to specifically identify what evidence contradicted what testimony. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (noting that an ALJ may not vaguely conclude that "a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion" (quoting *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009)). When an ALJ summarizes the medical evidence without specifically identifying inconsistencies between claimant testimony and the medical evidence, the district court may not "comb the administrative record to find specific conflicts." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493-94 (9th Cir. 2015) (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1139 (9th Cir. 2014)). The ALJ did no more than summarize the medical evidence and discuss the weight given to the medical evidence, but the ALJ made no attempt to link this discussion to Plaintiff's testimony or credibility analysis. Accordingly, the ALJ erred in evaluating Plaintiff's credibility with regard to her hearing loss and associated limitations.

## F. Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler*, 775 F.3d at 1099-1100. The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100.

The ALJ erred in determining that Plaintiff could perform the telephone solicitor occupation, failing to provide a reasonable explanation for the conflict between the VE testimony and the DOT and SCO descriptions of the telephone solicitor occupation, and finding that the appointment setter position qualifies as past relevant work. Further, the ALJ erred in failing to provide specific and legitimate reasons for discrediting Dr. Flaming's opinion that Plaintiff would be severely disabled in working over the telephone and in evaluating Plaintiff's credibility regarding her testimony relating to her hearing impairment and associated limitations, particularly working over the telephone. Further investigation or assessment into this limitation by the medical sources of record, or possibly even seeking additional medical information, may be helpful in resolving this ambiguity. Should the ALJ determine that Plaintiff cannot perform occupations that require telephone use and cannot perform any past relevant work, then further proceedings would allow the ALJ to reach step five of the sequential analysis to determine whether Plaintiff can make an adjustment to other work that exists in significant numbers in the national economy. Remand for further proceedings is therefore appropriate.

## CONCLUSION

The Commissioner's decision that Ms. Fowler was not disabled is REVERSED, and this case is REMANDED for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

DATED this 26th day of January, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge